## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION NO.:** |
| v. | ) | |
| | ) | **2:09-cv-924-MEF-SRW** |
| THE ADVERTISER COMPANY, INC., | ) | |
| d/b/a THE MONTGOMERY | ) | |
| ADVERTISER, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT THE ADVERTISER COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff David "LC" Johnson ("Johnson") has neither established a *prima facie* case, nor has he refuted Defendant The Advertiser Company d/b/a The Montgomery Advertiser's (the "Advertiser") legitimate, non-retaliatory reasons for his employment termination; in fact, he cannot do so. Instead, Johnson relies on his own speculation and his unjustified questioning of his employer's legitimate business decisions in an effort to create an illusion of pretext where none exists. The undisputed facts demonstrate that Johnson's termination was entirely unrelated to his alleged complaints about the workload of his reporters, and was instead based on his well-documented, persistent performance problems. Because no

genuine issue of material fact exists, the Advertiser's motion for summary judgment is due to be granted.

## I.  RESPONSE TO JOHNSON'S STATEMENT OF FACTS

Although the Advertiser does not agree with Johnson's characterization of the facts, it does not dispute them all.  Nevertheless, several inaccuracies within his version of events must be clarified:

1.    Johnson mischaracterizes the "reorganization" that took place at the Advertiser around the time of his promotion to Sports Editor.  The paper formed a Local Information Center ("LIC"), focusing on local news.  (Brown 19).  While the *Sports Department* no longer included copy editors and paginators, those positions were not eliminated; the same individuals continued to perform those job duties at a consolidated copy desk, no longer supervised by the Sports Editor.  (Brown 22-23).  This change did not affect Johnson's position or his workload as Sports Editor.  Further, the Advertiser did not "eliminate[] [Johnson's] ability to use freelance/stringer writers" as part of this restructuring.  (Lloyd 83-84; Pl. Resp. 2).

2.    In his Response, Johnson goes to great lengths to highlight all of the positive remarks in the three performance evaluations conducted by Local Editor Gary Maitland.  (Pl. Resp. 3-5).  He omits, however, Maitland's recurring references to his confrontational behavior toward other employees, which are present in all three of the evaluations cited.  (Johnson Exs. 7, 9, 11).  Further, he

fails to mention the areas that needed improvement (as noted in the evaluations) which remained largely unchanged and unimproved throughout his tenure. (Johnson Exs. 7, 9, 11, 13, 15, 18, 23).

3.    Johnson's Response also misstates the nature of his alleged complaints to the Advertiser by saying that he complained "at least ten times from 2007 through the end of his employment that the Defendant's practice of disallowing overtime was forcing his employees to underreport their hours on their time cards, and as a result, the Defendant was not paying the reporters for all of the time that they worked." (Pl. Resp. 7). According to his own testimony, many of his alleged complaints were that the workload assigned to the sports reporters could not be completed in 40 hours per week or that he was "understaffed and overworked." (Johnson 226-27, 291). These are not FLSA protected complaints, and do nothing more than highlight Johnson's refusal to grasp an essential function of his job: effective and efficient management of assignments in an effort to avoid unnecessary overtime. (Johnson Ex. 25, Gray Decl. 2)  This is a legitimate and legal employer expectation, particularly during troubled economic times.

4.    Johnson mischaracterizes the testimony regarding his complaints that his reporters would not be able to take "comp time" during the summer. (Pl. Resp. 9). Contrary to his assertions, there is no evidence that the Advertiser told Johnson that his reporters could not take vacation time in the summer; rather, their concerns

involved the fact that his reporters had not yet taken vacation time and would lose it if they did not take it by the end of the year. Johnson complained that his reporters were not allowed to take "comp time" in the summer, a complaint stemming from Johnson's perception that there is an industry-wide practice allowing sports reporters to take time off during the summer to somehow compensate them for overtime worked during peak sports season. (Johnson 246-49). Such a system would violate Advertiser policy, which provides for comp time only during the week of the overtime worked and payment of any overtime remaining uncompensated at the end of the week. (Lloyd 97-98). The Advertiser did not deny the sports reporters "accrued comp time," because comp time does not accrue from week-to-week. (Lloyd 97-98). The Advertiser's denial of summer comp time highlights its efforts to uphold the law in compensating employees.

5.    Johnson states that his performance consistently improved during his PIP, something directly contrary to his own testimony indicating that he did not change his behavior during the PIP. (Johnson 302). This self-serving assertion ignores Gray's comments for weeks six, seven, and eight of the PIP, noting that Johnson "hit a plateau" in improving his performance, and identifying areas in which Johnson failed to improve despite her specific instructions. (Johnson Ex. 19).

6.    Johnson cites the deposition of Hillary Funk, a former Advertiser employee who did not work in the same department as Johnson. Because she worked elsewhere, she cannot address any of the allegations about payment of sports reporters or Johnson's alleged complaints to the Advertiser. (Funk 18-19). Instead, she provided testimony that she falsified her own time cards because she speculated that reporting overtime could result in "getting laid off," although she could provide no reason for such unsubstantiated speculation. (Funk 30). Ms. Funk's testimony is not based on fact, but on her own speculation and, thus, fails to offer any legitimate support to Johnson's claim.

## II. ARGUMENT

Johnson had repeated and continual performance problems that he admittedly refused to address. His termination was legitimate, non-retaliatory, and non-pretextual, and he cannot establish a genuine issue of material fact. Accordingly, summary judgment is due to be granted.

### A.    Johnson did not establish a *prima facie* case of retaliation.

As set forth by both parties, a *prima facie* case for retaliation requires a plaintiff to demonstrate that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between his protected activity and the subsequent adverse action. Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342-43 (11th Cir. 2000). Johnson's case fails because he cannot

establish the first or third prongs of this test.

> 1.   **Johnson did not engage in protected activity under the FLSA.**

Even assuming, for purposes of summary judgment only, that the plaintiff made the complaints he alleges, he did not engage in protected activity. As set forth in the Advertiser's initial brief, a circuit split currently exists as to whether an employee engages in protected activity by making internal complaints to his or her employer or if the employee must file a complaint or proceeding to trigger coverage under the FLSA.[1] The Supreme Court of the United States has agreed to consider the issue this Fall and will specifically address a dispositive issue in this case: whether an oral internal complaint will suffice as protected activity under the FLSA. Kasten v. Saint-Gobain Perf. Plastics Corp., No. 09-834, 130 S. Ct. 1890, 2010 WL 128339 (Mar. 22, 2010). To the extent that the Supreme Court affirms the Seventh Circuit, Johnson's conduct was not protected activity, and this case is due to be dismissed.[2]

Even if the Supreme Court holds that verbal, internal complaints *are* sufficient to constitute protected activity, Johnson's verbal, internal complaints about being "understaffed and overworked" and the denial of summer "comp time"

---

[1] As noted in its initial brief, the Advertiser concedes that current Eleventh Circuit law dictates that an oral complaint satisfies the protected activity requirement of the FLSA. The Advertiser, however, shares the concerns of the Second, Fourth and Seventh Circuits, which have found such a conclusion inconsistent with the plain language of the FLSA.
[2] Johnson's attempt to skirt this issue is disingenuous. The email he cites as a "writing" does not contain *any* complaints about unpaid overtime. (Johnson Ex. 14).

nevertheless do not constitute protected complaints under the FLSA.  (Johnson 226-27, 246-49, 291).

### 2.      No causal connection exists between Johnson's alleged complaints and his termination.

Johnson has not shown a causal connection between his alleged complaints and his termination.  He attempts to rely on the temporal proximity between his last complaint to Linda Browder and the inception of his PIP and termination.  (Pl. Resp. 24).  He testified, however, that he did not know whether his conversation with Browder was ever relayed to Gray, and there is no evidence that the conversation was shared with Gray or anyone else.  (Johnson 291-93).   In the absence of any evidence that the decision-makers who placed Johnson on a PIP and ultimately terminated him had any knowledge of Johnson's conversation with Browder, the temporal proximity between that conversation and his PIP or termination is immaterial.  See Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) ("'A plaintiff satisfies this element if she provides sufficient evidence' of knowledge of the protected expression and 'that there was a close temporal proximity between this awareness and the adverse . . . action.'") (emphasis added).

Even if Browder had communicated Johnson's alleged complaint to Gray and Lloyd, Johnson alleges that his last complaint was made prior to his PIP, which was developed on August 28, 2008, and began on September 4, 2008. (Johnson 265, Ex. 18).  Thus, nearly three months elapsed between his last alleged

complaint and his termination on November 21, 2008.  Such a time lapse is insufficient to establish temporal proximity. See, e.g., Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001)(citing with approval several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case); and Higdon, 393 F.3d at 1221 ("By itself, the three month period between the September 29 letter and the December 31 incident does not allow a reasonable inference of a causal relation between the protected expression and the adverse action.").

Moreover, Johnson's placement on a PIP belies his claim that the Advertiser retaliated against him based on this conversation with Linda Browder or any other complaint.  Had the Advertiser wanted to retaliate for Johnson's alleged complaints, it had ample reason to terminate him earlier in 2008, rather than placing him on a three-month PIP.  Johnson argues that he believed the PIP was a "joke," but Johnson cannot support this speculation because he admittedly did not even attempt to improve his performance during the PIP.  (Johnson 299-301).

**B.    The Advertiser met its burden and there is no evidence of pretext.**

The Advertiser presented legitimate, non-retaliatory reasons for Johnson's employment termination, namely his repeated poor performance.  "[T]o avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered . . . reasons is

pretextual." Chapman v. AI Transport, 229 F.3d 1012, 1037 (11th Cir. 2000). This Johnson has failed to do.

Throughout his Response, Johnson makes conclusory statements, contending that "a jury could find pretext" on a number of issues. These conclusory statements, however, are not based on evidence and are insufficient to establish pretext. For example, Johnson states, "In this case, a jury could find pretext in that the evidence suggests that the Defendant was attempting to make a case to terminate Mr. Johnson for his ongoing complaints on overtime issues for his staff." (Pl. Resp. 29). Johnson does not identify what "evidence" makes such a suggestion, and in fact the testimony does not demonstrate any attempt by the Advertiser to "make a case" against Johnson. Instead, the Advertiser gave Johnson multiple opportunities to improve his performance (before, during and after his alleged complaints), as well as specific direction in how to do so, together with praise where it was warranted. Rather than build a "case" against Johnson, the Advertiser put him on a PIP that outlined specific steps to improve and retain his position as Sports Editor.

Johnson argues that his performance did not warrant termination. However, a plaintiff's positive assessment of his own performance is insufficient to establish pretext, as it is the employer's assessment that is relevant. See Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997)("The inquiry into pretext centers upon the

employer's beliefs, and not the employee's perceptions of his own performance"). Moreover, a few instances of positive reinforcement from the Advertiser do little to rebut the performance problems that plagued Johnson's tenure as Sports Editor. Certainly, no employee struggles in all areas of performance, and Johnson was no exception.[3]   The Advertiser acknowledged good work where justified, disproving Johnson's "they were out to get me" conspiracy theory.

Johnson's attempt to combat each of the reasons for his termination, as articulated in Lloyd's memorandum, fails.   He misstates the circumstances surrounding his termination, as he was terminated for failing to successfully complete his PIP.   Lloyd's memorandum documented specific instances that led to performance warnings, then to his PIP, and ultimately to his termination.   (Johnson Ex. 23).

### 1.   Johnson's has not refuted each and every reason leading to his termination.

To defeat summary judgment, Johnson must establish that each and every reason for his termination is pretextual.   His admission that he failed to follow his employer's instructions supports his termination and does not establish pretext. See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000)("[i]f the

---

[3] Contrary to the plaintiff's assertion, the Making the Difference award does not in any way "call[] into question the legitimacy of the Defendant's alleged concerns with his planning skills." (Pl. Resp. 30).   The award involved customer assistance, was entirely unrelated to Johnson's ability to plan and schedule his reporters' work, and does not, therefore, cast any doubt on the Advertiser's basis for terminating Johnson.

plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether *each* of the defendant's articulated reasons is pretextual, the defendant is entitled to summary judgment.") (emphasis added).  Johnson admits to committing many of the acts on which his termination was premised:

- He does not dispute that he failed to provide coverage of an Olympic story with local ties despite specific instruction to do.  Instead, he offers an off-the-mark explanation, claiming that he "did what he was supposed to do" because he assigned the story to a reporter who never completed it.  (Pl. Resp. 32).  To the contrary, Gray tasked Johnson with ensuring that the story was printed in the sports section, which never happened.  (Gray 120-24).  If the reporter who was initially assigned the story could not complete it, the responsibility lay with Johnson to assign the story to a reporter who could cover it.

- He makes excuses as to his absence from several meetings held during his PIP, but does not deny missing the meetings or the fact that one of the terms of his PIP was attendance at scheduled meetings.  (Pl. Resp. 36-37; Johnson 395). Johnson also points to his performance evaluation in 2008, which notes that he did "a good job of directing his staff this past year – holding meetings…"  (Johnson Ex. 11; Pl. Resp. 40).  This evaluation was dated March of 2008 and thus predated the peak sports season for 2008, for which Gray directed that Johnson implement weekly meetings.  (Johnson Ex. 11).  These meetings were not held consistently.

(Johnson Exs. 19-21).

- He argues that he attempted to schedule his reporters' vacation time during the summer months, but does not state that he actually addressed the problem. In fact, the deposition testimony he cites merely establishes that at some point in time Johnson had "a conversation with someone about a concern about his employees using their vacation time." (Lloyd 97-100; Pl. Resp. 43). There is no evidence that Johnson attempted to schedule vacation time or that his attempt was refused by the Advertiser. Additionally, as discussed *supra*, any attempt by Johnson to schedule "comp time" for his reporters in the summer months violated Advertiser policy and does not establish pretext.

- He does not dispute the fact that he argued with a customer who called about coverage of the University of Florida. Johnson casts this episode as a coverage issue, contending that the University of Florida was not in the Advertiser's coverage area and therefore Johnson's failure to cover Florida sports was appropriate. (Pl. Resp. 44-45). The Advertiser, however, disciplined Johnson because he was rude to the customer who called to complain, and not because he failed to cover athletics for the University of Florida. (Johnson Ex. 22, Lloyd 77-78). Rather than demonstrating pretext, this incident supports the Advertiser's decision to terminate Johnson for failure to successfully complete his PIP. Johnson's PIP specifically required that he improve his interpersonal skills, and his

confrontation with this customer provides an example of his failure to improve according to the terms of his PIP. (Johnson Exs. 18, 22).

- Johnson's attempts to combat his problems with planning and prioritizing also fail because he admitted, during his employment, to those areas of weakness. (Johnson Exs. 8, 9, 19-21). His inability or unwillingness to prioritize and plan were documented throughout his tenure as Sports Editor, and *Johnson himself* included them in his self-evaluations as areas that needed improvement. (Johnson Exs. 8, 9, 19-21).

- Most significantly, Johnson does not dispute the fact that he did not even try to improve his performance during the PIP. (Johnson 302). His blatant and smug disregard for the opportunity to improve and to retain his employment establishes that the Advertiser's reasons for termination were legitimate and non-retaliatory. [4]

Because Johnson has not disputed and cannot dispute each and every reason for his termination, his efforts to defeat summary judgment are futile, and the Advertiser's motion for summary judgment is due to be granted.

---

[4] Johnson argues that the Advertiser's use of the PIP to terminate him suggests pretext because Lloyd's memorandum does not list specific examples of noncompliance with the PIP. (Pl. Resp. 35). Of course, the PIP lists specific areas of improvement, and Gray's follow-up memoranda identify specific areas of the PIP where the plaintiff failed to improve. (Johnson Exs. 18-21). A lack of specificity in Lloyd's memorandum regarding an area that had already been outlined for Johnson, repeatedly and with specificity, hardly demonstrates pretext. Johnson was entirely aware of the areas of the PIP that he did not complete, and in fact testified that he did not even try to complete the PIP. (Johnson 300-302). Failure to complete his PIP cannot be pretextual when Johnson does not dispute it. Contrary to Johnson's argument, his performance evaluations from Gary Maitland predate his PIP and do not counter Gray's evaluations of his performance during the PIP. (Johnson Exs. 7, 9, 11).

## 2.   Johnson cannot establish pretext where the Advertiser legitimately believed that he had committed infractions.

In several instances, Johnson either denies violating company policy, or makes excuses for his improper conduct, none of which supports an assertion of pretext and all of which are immaterial. <u>See</u> <u>Sweeney v. Alabama Alcoholic Beverage Control Bd.</u>, 117 F.Supp. 2d 1266, 1272-74 (M.D. Ala. 2000)("Whether or not a plaintiff actually committed the work rule violations is immaterial on the issue of pretext. Rather, what is material is whether or not the employer believed the allegations to be true, not whether they were in fact true."). For example:

- Johnson claims that his violation of company policy was not for improper use of the company credit card, but for failure to pay the outstanding balance of his card at the end of the month. (Pl. Resp. 31-32). Lloyd's testimony disputes that allegation, making clear that it was her impression that Johnson used the credit card for an improper purpose. (Lloyd 71). Johnson's denial of the violation is immaterial.[5]

- Johnson contends that he had prepared the bowl coverage on the date of his termination, but this assertion does not support his allegation of pretext.

---

[5] Further, Johnson dismisses this violation of company policy as "trivial" and, by a string of case citations, compares the infraction to stealing a bag of potato chips from another employee who did not care or helping another employee fix a fingernail while on break. The case he cites for the proposition that "an employer does not meet its burden of establishing a non-discriminatory reason by relying on conduct which could be permitted by the employer's practices" is inapposite. <u>See</u> <u>Byrd v. Lakeshore Hosp.</u>, 30 F. 3d 1380, 1383 n.5 (11th Cir. 1994) (Pl. Resp. 33). Using a company credit card for personal purchases and failing to pay the bill at the end of the month were *not* permitted by the Advertiser's practices or policies. (Johnson Ex. 16).

Even if Johnson had prepared a bowl coverage plan on the date of his termination, he cannot establish that he had done so within the timeframe expected by the Advertiser or that the Advertiser knew that he had prepared these plans; Lloyd and Gray's testimony indicates their belief, as his employer, that Johnson's actions failed to meet their expectations. (Lloyd 102, 105; Gray 125, 129-30).

Johnson's denials and excuses do not establish pretext, but emphasize that he was not meeting his employer's legitimate performance expectations. His termination was warranted and wholly unrelated to his alleged complaints.

## III. CONCLUSION

This is a case where enough was finally enough. The Advertiser repeatedly attempted to coach Johnson in an effort to improve his behavior, despite conduct that, on its face, warranted immediate termination. Finally, the Advertiser placed him on a Performance Improvement Plan, hoping to rehabilitate him into a productive employee. Johnson took the PIP as a "joke" and admits that he made no effort to change his performance during the three months of the PIP. Under the circumstances, his termination was both legitimate and necessary; it had nothing to do with his alleged complaints. He has not established a genuine issue as to any material fact, but rather has questioned his employer's business decisions at every turn. It is neither his place, nor the Court's, to do so. See Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) ("federal courts do not sit to second-

guess the business judgment of employers..."). Accordingly, the Advertiser's motion for summary judgment is due to be granted.

s/Lynlee Wells Palmer
Lynlee Wells Palmer (ASB-4367-T82P)

s/Anita Kay Head
Anita Kay Head (ASB-8561-T39H)

Attorneys for The Advertiser Company
d/b/a The Montgomery Advertiser

**OF COUNSEL:**

**JOHNSTON BARTON**
**PROCTOR & ROSE LLP**
Colonial Brookwood Center
569 Brookwood Village, Suite 901
Birmingham, Alabama 35209
Telephone: 205-458-9400
Facsimile: 205-458-9500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 22, 2010, I electronically filed the foregoing via the Court's CM/ECF system, which will electronically send notice to the following counsel of record:

Heather N. Leonard, Esq.
**HEATHER LEONARD, P.C.**
P.O. Box 43768
Birmingham, Alabama 35243

s/Lynlee Wells Palmer
Of Counsel

17