IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:09-CV-924-MEF |
| | ) | |
| THE ADVERTISER COMPANY, *d/b/a* | ) | (WO PUBLISH) |
| THE MONTGOMERY ADVERTISER, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION AND ORDER

## I. Introduction

This cause is currently before the Court on the Defendant's motion for summary judgment. (Doc. #20). This is a suit under the Fair Labor Standards Act for unlawful retaliation. The Plaintiff, David Johnson, claims that he was dismissed from his job at The Montgomery Advertiser (the Advertiser) because of his repeated complaints to the Advertiser's management regarding what he believed were unlawful compensation practices. Johnson claims that the Advertiser's decision to terminate his employment was retaliatory in nature and violated the Fair Labor Standards Act. (Doc. #1). Because the Court finds that Johnson has not carried his burden to demonstrate unlawful retaliation, the Advertiser's motion for summary judgment is due to be GRANTED.

## II.  Jurisdiction

This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question).  The parties do not contest personal jurisdiction or venue and the Court finds adequate allegations of both.

## III.  Factual and Procedural Background[1]

The Advertiser is a daily newspaper in Montgomery, Alabama.  Johnson is a journalist who joined the Advertiser on May 30, 2006 as an assistant sports editor.  He was assistant sports editor until March 30, 2007 when he accepted a position as the Advertiser's community conversations editor.  In 2007, in response to a difficult financial environment for the Advertiser and newspapers in general, the Advertiser initiated an organizational restructuring.  As a result of the restructuring, the Advertiser converted itself into a Local Information Center (LIC) to increase its coverage of topics of local interest in Montgomery.  In April 2007, Johnson was promoted to sports editor.  Johnson's changing responsibilities at the Advertiser coincided with the Advertiser's reorganization into an LIC.  As a result of the reorganization, the Advertiser reduced its sports writing staff.  (Doc. #24, 2).  Because of the staff reductions, Johnson assumed duties that were not previously performed by the sports editor.  (*Id.*).  Johnson regularly worked more than 40 hours a week to complete all the work expected of him.  Johnson claims that his sports reporters also worked more than 40

---

[1] In its Reply Brief, the Advertiser disagrees with several of Johnson's factual assertions. (Doc. #26, 2).  For summary judgment purposes, the facts are construed in the light most favorable to Johnson.  *See Swisher Int'l, Inc. v. Schafer*, 550 F.3d 1046, 1050 (11th Cir. 2008).

hours a week to complete all of their work.  (Doc. #24, 5).  The excess hours worked by Johnson's staff are the source of the current lawsuit.  According to Johnson, Mel Gray, the managing editor at the time, and Wanda Lloyd, the executive editor, instructed him to not allow his staff to report the overtime hours that they worked. (Doc. #24, 7).  Johnson states that his sports reporters were aware of this instruction and instead of accurately reporting their weekly hours, they consistently reported only 40 hours a week even though they had actually worked more.[2]

Prior to his termination, Johnson voiced his concerns about the Advertiser's compensation policy.  First, Johnson approached the human resources office as well as his own supervisors to inform them that his reporters were working more than 40 hours a week. (Doc. #24, 19-20).  According to Johnson, he told human resources and his supervisors that his reporters should either be paid for the time they worked or else they should receive compensatory time off.  (*Id.*).  Neither Johnson's brief nor the citation to his deposition provide a date for these conversations.  Second, Johnson informed Mel Gray that Johnson's reporters were intentionally under reporting their time in response to pressure not to submit overtime hours. (Doc. #24, 20).  Although Johnson does not provide a date for this conversation, it appears from Johnson's deposition that the conversation occurred shortly before Johnson's August 26, 2008 conversation with Linda Browder.  (Johnson Depo.

---

[2]   The Advertiser's stated overtime policy allows for overtime pay in two situations: (1) when the overtime is approved in advance, and (2) without prior approval when there is breaking news or other emergency situation.  (Doc. #21, 16).

232:4–234:11); (Johnson Depo. 291:1-23).[3]   Third, on April 29, 2008, Johnson sent Mel Gray an email claiming that he was one of a few people employed at the Advertiser "who has the courage to speak up in the face of injustices in [the] newsroom." (Doc. #24, 20).  More generally, Johnson claims that he raised at least ten complaints regarding the Advertiser's hours reporting policy beginning in 2007 and continuing until he was placed on a performance improvement plan. (Doc. #24, 18).  According to Johnson, he was terminated for his efforts to bring to light the Advertiser's failure to properly compensate the sports writing staff for the overtime that they were working.

In its motion for summary judgment, the Advertiser claims that Johnson was an unsatisfactory employee who was unable to manage his staff's time, failed to execute directives from management, was rude to colleagues and customers, and ultimately showed no desire or ability to improve his behavior.  (Doc. #21, 4-6).  The Advertiser provides several examples of Johnson's unsatisfactory performance.  In September 2007, Johnson failed to attend the media luncheon hosted by the Ladies Professional Golf Association in connection with the Navistar golf tournament hosted in nearby Prattville, Alabama.  (Doc. #21, 6). On April 29, 2008, Mel Gray issued Johnson a disciplinary letter indicating that

---

[3]  This timeline is somewhat problematic.  The timing of events contained in Johnson's deposition indicates that the conversation occurred during Auburn University's 2008 football season but before Johnson's August 26, 2008 conversation with Linda Browder.  The Court takes judicial notice of the fact that Auburn University did not play its first football game of 2008 until August 30.  Nevertheless, viewing the facts in the light most favorable to the non-moving party, the Court finds, for purposes of its current analysis, that the conversation occurred sometime during the late summer of 2008, but in any case prior to Johnson's August 26, 2008 conversation with Linda Browder.

employees had reported that Johnson was contributing to an increasingly uncomfortable work environment in the newsroom during the evenings. (Doc. #21, 7). On May 22, 2008, Wanda Lloyd issued Johnson a performance warning related to an incident where Johnson threatened a senior manager at the Advertiser. (Doc. #21, 8). On June 18, 2008, Wanda Lloyd issued Johnson a verbal warning for misuse of a company credit card. On August 14, 2008, Mel Gray issued Johnson a verbal warning for failing to follow through on a story of local interest related to the 2008 Beijing Olympics. (Doc. #21, 8-9).

On September 4, 2008, the Advertiser placed Johnson on a 90-day performance improvement plan, or PIP. (Doc. #21, 9). The PIP identified five specific performance problems: (1) failure to plan; (2) failure to cover certain types of sporting events; (3) ineffective communication with reporters and managing editors; (4) failure to adhere to company policy; and (5) inappropriate workplace behavior. (Doc. #22-7, 12). The PIP also listed the level of performance that it expected in each of the problem areas and set forth steps for correcting the problem areas. (*Id.*). Over the next few weeks, Mel Gray tracked Johnson's progress through a series of weekly assessments that she sent to Johnson. (Docs. #22-7, 15; #22-7, 17; #22-7, 20). The final weekly assessment, dated November 14, 2008, indicated that Johnson's performance was still not meeting the standards expected of him. (Doc. #22-7, 15). On November 18, 2008, Wanda Lloyd issued Johnson a final performance warning related to a customer complaint she received claiming that Johnson was rude on the telephone. (Doc. #22-7, 23).

5

The Advertiser terminated Johnson's employment on November 21, 2008.  In the termination memorandum, Wanda Lloyd restated the five performance problems identified in the PIP and described how Johnson had failed to meet the standard of performance required in those areas.  (Doc. #22-7, 24).  In the final five paragraphs of the memorandum Wanda Lloyd described Johnson's declining performance since the beginning of the PIP and points to specific dates and events where Johnson's performance failed to meet the standards set in the performance improvement plan.  The first of those paragraphs describes Johnson's absence from a training meeting.  The second paragraph indicates that Johnson failed to properly manage his staff's vacation schedule, submit proposed sports section content on time, and hold monthly staff meetings.  The third paragraph describes Johnson's poor customer service and lack of self control.  The fourth paragraph describes Johnson's failure to properly communicate assignments to his sports reporters resulting in staff confusion and also describes an incident where he shouted at a reporter over the telephone.  The memorandum concludes with Wanda Lloyd stating that the Advertiser no longer had confidence in Johnson's ability to lead the sports team and terminating Johnson's employment effective November 21, 2008.

On October 2, 2009, Johnson filed a complaint for unlawful retaliation in violation of the Fair Labor Standards Act.  (Doc. #1).  Johnson filed an amended on January 29, 2010.  (Doc. #17).  The Advertiser filed a motion for summary judgment on June 28, 2010.  (Doc. #20).  The Advertiser's motion for summary judgment has been fully briefed and is ripe for disposition.

6

## IV. Discussion

**A.**    **Summary Judgment Standard[4]**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56(a).  A party may demonstrate the existence of or absence of a genuine dispute as to any material fact by pointing to materials in the record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . admissions, interrogatory answers, or other materials." *Id.*  The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those evidentiary submissions "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party to go beyond the pleadings" and by its own evidentiary submissions or those on file, demonstrate that there is a genuine factual dispute for trial.  *Id.* at 324.  The Court must draw all justifiable inferences from the evidence in the non-moving party's favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

---

[4]  The Court notes that in the time since the Advertiser filed its motion for summary judgment, Congress allowed the proposed amendments to Federal Rule of Civil Procedure 56 to become effective.  The Court has applied the amended version of Rule 56.  The Court has considered whether applying the previous version of Rule 56 would affect the outcome of this Order and has determined that it would not.

**B.      Retaliation Claims Under The Fair Labor Standards Act**

The Fair Labor Standards Act (FLSA) makes it unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. *See* 29 U.S.C. § 215(a)(3).

In the Eleventh Circuit, retaliation claims under the FLSA are analyzed under the burden-shifting framework employed by courts in cases brought under Title VII of the Civil Rights Act. *See e.g., Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000). Under this framework, the plaintiff must first establish a prima facie case of unlawful retaliation. This requires the plaintiff to demonstrate (1) that the plaintiff engaged in activity protected by the FLSA; (2) that the plaintiff suffered adverse action from his employer; and (3) that there was a causal connection between the protected activity and the adverse employment action. *See Wolf*, 200 F.3d at 1342-43. If a plaintiff can successfully make out a prima facie FLSA violation, then the burden shifts to the employer to establish that the adverse employment action was taken for a legitimate, non-retaliatory reason. *See Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir. 1999). If the employer can articulate a legitimate, non-retaliatory reason for the adverse employment action, then the burden shifts back to the plaintiff to show that the employer's reasons for the adverse action are merely pretextual. *See Wolf*, 200 F.3d at 1342-43. If the plaintiff fails to demonstrate that there is a genuine issue of material fact concerning whether the employer's articulated reasons for the adverse employment action are pretextual, then the employer is entitled to summary judgment on the retaliation claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

1.      **The prima facie case**

a.      **Did Johnson Engage in Protected Activity?**

The Eleventh Circuit has interpreted the FLSA as protecting from retaliation employees who make internal "informal complaints" to their employer about FLSA violations.  *See EEOC v. White and Sons Enters.*, 881 F.2d 1006, 1011 (11th Cir. 1989) (even though the charging parties had not yet filed formal charges with the EEOC or performed an act that is explicitly listed in the FLSA's anti-retaliation provision, the discharge can still be retaliatory in nature); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, --- U.S. ----, 2011 WL 977061 (2011) (holding that the phrase "filed any complaint" in the anti-retaliation provision of the FLSA includes oral as well as written complaints).

Johnson claims that he engaged in protected activity on at least three separate occasions: (1) when he informed his supervisors that his reporters were working more than 40 hours a week and requested that they be compensated through overtime pay or compensatory time off, (Doc. #24, 19-20); (2) when he informed Mel Gray that the sports reporters were intentionally under reporting their hours due to pressure that they not work more than 40 hours a week, (Doc. #24, 20); and (3) when he sent Mel Gray an email claiming that he was one of a few people employed at the Advertiser "who has the courage to speak up in the face of injustices in [the] newsroom."  (Doc. #24, 20).  Johnson also claims that between 2007 and September 2008 he made at least ten other complaints regarding the Advertiser's pressure not to allow employees to submit overtime.  (Doc. #24, 21).

The Advertiser argues that Johnson's complaints are not "protected activity" under

9

the FLSA.  Rather, the Advertiser argues, Johnson complained about being understaffed and overworked.  (Doc. #21, 22); (Doc. #26, 3).

Even though Johnson may not have mentioned the FLSA by name in any of his internal complaints, this does not disqualify his statements from being considered protected activity.  *See Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1134 (N.D. Ga. 2004).  The Court finds that Johnson's complaints are not simply complaints about understaffing and work hours.  Rather the complaints, as described in Johnson's briefs, demonstrate Johnson's concern over a company policy that, according to Johnson, actively encouraged underreporting of hours worked.  The evidence shows that Johnson honestly believed that the Advertiser was unlawfully failing to  compensate its employees for all of the time they worked.  It was also objectively reasonable for Johnson to believe that the Advertiser's alleged failure to properly compensate employees–either monetarily or through compensatory time off–was against the law.  Therefore, the Court finds that Johnson engaged in protected activity.

### b.   Did the Advertiser Take Adverse Employment Action Against Johnson?

The Advertiser concedes that it took adverse employment action against Johnson when it terminated his employment on November 21, 2008.  (Doc. #21, 23 n.4). Accordingly, the second prong of the prima facie case is satisfied as of the date of Johnson's termination.  But Johnson claims that the Advertiser took adverse employment action against him before he was terminated.  According to Johnson, the cumulative effect of the multiple disciplinary letters and the initiation of the PIP constituted adverse employment action.  (Doc.

#24, 22).[5]   Whether or not these actions constitute an adverse employment action is potentially significant because the causation analysis in the third prong of the prima facie case is time-sensitive.  Adverse employment actions against Johnson that are closer in time to his alleged protected activity could strengthen his argument that there was a causal connection between his protected activity and the adverse action.  *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).

"Adverse employment action does not refer only to ultimate employment decisions, such as the decision to discharge an employee." *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998)).  Instead, an employer's actions constitute adverse employment action if they reach "some threshold level of substantiality." *Id.* The relevant inquiry is whether an employer's actions likely would have "dissuaded a reasonable worker from making or supporting a charge" against the employer.  *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

An employer's actions may be evaluated cumulatively. *Wideman v. Wal-Mart Stores, Inc.* 141 F.3d at 1456 ("It is enough to conclude, as we do, that the actions about which Wideman complains considered collectively are sufficient to constitute prohibited

---

[5]  Although not contained in the Amended Complaint, Johnson argues in his response to the Advertiser's motion for summary judgment that the retaliatory conduct also included the multiple disciplinary letters and Johnson's placement on the PIP.  (Doc. #24, 22).  The Court need not have considered this conduct as retaliatory because it was not pled in the Amended Complaint. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  However, the Advertiser has not opposed Johnson's reliance on these unpled allegations and, even considering these unpled retaliatory facts, the Court still finds that the Advertiser's motion for summary judgment is due to be granted.

discrimination."). Under this analysis, at least one court held that multiple counseling notices coupled with negative evaluations and temporary employment probation constitute adverse employment action. *See Leatherwood v. Anna's Linens Co.*, 384 Fed. App'x. 853 (11th Cir. 2010).

Evaluated individually, the actions taken against Johnson prior to his placement on the PIP do not constitute adverse employment action. The multiple disciplinary letters are too insignificant to be considered adverse employment actions. Moreover, most, if not all, of these letters were related to legitimate concerns about Johnson's performance or behavior problems and therefore would not likely have dissuaded a reasonable employee from raising a complaint.[6] Moreover, Johnson does not claim that the disciplinary letters he received resulted in any serious or material change in the terms, conditions, or privileges of his employment.

Johnson argues for a cumulative view of the Advertiser's actions against him. He contends that the disciplinary letters combined with the PIP constitute adverse employment action independent and apart from the termination of his employment. (Doc. #24, 21-22). Following the example of *Leatherwood*, the Court finds that the disciplinary letters and the initiation of the PIP, when viewed in the aggregate, crossed the threshold into adverse employment action. *See Leatherwood v. Anna's Linens Co.*, 384 Fed. App'x. at 858. Only when the Advertiser placed Johnson on the PIP did the aggregate of the Advertiser's actions

---

[6] In his deposition, Johnson disputes that the Advertiser actually received a complaint about a hostile work environment. Johnson states that after he received the warning he personally asked the members of the newsroom who had made the complaint and nobody came forward. However, neither Johnson's complaint nor his brief opposing the motion for summary judgment dispute that the allegations in the disciplinary letter were based on actual events.

cross the threshold of substantiality needed to satisfy the *Burlington Northern* criteria that a reasonable worker would be dissuaded from making or supporting a charge against his employer. *See Burlington Northern and Santa Fe Ry. Co.*, 548 U.S. at 68.

   **c. Was the Adverse Employment Action Causally Connected to Johnson's Protected Activity?**

   To establish a causal connection between an employee's protected activity and an employer's adverse employment action, the employee must prove that he "would not have been fired but for his assertion of FLSA rights." *Wolf*, 200 F.3d at 1343. At the prima facie stage of the case, this standard simply requires Johnson to show that his protected activity and the adverse employment action are not completely unrelated. *See Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001).

   One common method of establishing the causal link element is close temporal proximity between the adverse employment action and the protected activity. Three months appears to be the outer limit of the temporal proximity test. *See Walton v. Neptune Tech. Group, Inc.*, No. 2:08-cv-5-MEF, 2009 WL 3379912, at *15 (M.D. Ala. Oct. 20, 2009) (Fuller, J.) (finding that the termination of an employee less than three months after the employee engaged in protected activity "is sufficient circumstantial evidence to satisfy" the causation element); *see also*, *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (In a Family and Medical Leave Act discrimination case the court stated, "We are not persuaded that three months . . . is sufficiently proximate to show causation.").

   Nevertheless, "[c]lose temporal proximity is not the only means by which a plaintiff can establish a causal connection. To the contrary, courts have routinely found a causal

connection even as to retaliatory acts occurring long after the protected activity, where those events are linked by a chain of intervening retaliatory acts." *Greathouse v. Premier Beverage Co.*, No. 8:08-cv-1170-T-30TGW, 2009 WL 3429796, at *10 (M.D. Fla. Oct. 21, 2009) (citing *Bass v. Board of County Com'rs, Orange County, Fla.*, 256 F.3d 1095, 1117-19 (11th Cir. 2001) (deeming the causal connection element satisfied even though the adverse action occurred more than one year after the EEOC charge, where the retaliatory acts commenced shortly after the charge was filed) (overruled on other grounds)).

Johnson claims that he first complained about his reporters under reporting their time in 2007.  He claims that he continued to complain about the Advertiser's refusal to pay overtime compensation to the sports reporters until the Advertiser terminated his employment in November 2008.  (Doc. #17, 4-5).  According to Johnson's Amended Complaint, the Advertiser retaliated against Johnson when it fired him on November 21, 2008.  (Doc. #17, 6).  Johnson also alleges that the Advertiser retaliated against him when it issued the multiple disciplinary letters and placed him on the PIP on September 4, 2008.  (Doc. #24, 25).

The Court finds that Johnson has adequately alleged the causation element of the prima facie case.  Construing the facts in the light most favorable to Johnson, the Court finds that Johnson's protected activity began with his April 29, 2008 email to Mel Gray.  The Court also finds that that email was sufficiently close in time to the series of disciplinary letters and Johnson's placement on the PIP on September 4, 2008 to establish the causation element for purposes of the prima facie case.  In addition, the Court finds that Johnson's conversation with Linda Browder on August 26, 2008 is sufficiently close in time and not wholly unrelated to the Advertiser's decision to terminate Johnson on November 21, 2008

14

to satisfy the causation element of the prima facie case.

In sum, the Court finds that Johnson has alleged a prima facie case of unlawful retaliation.  The Court finds that Johnson engaged in protected activity beginning in April 2008 and on several subsequent occasions leading up to his termination in November of 2008.  The Court also finds that Johnson suffered adverse employment action through a chain of events that began with disciplinary letters from management and ended when the Advertiser placed him on the PIP on September 4, 2008.  Johnson also suffered adverse employment action when the Advertiser terminated his employment on November 21, 2008.  Lastly, the Court finds that the temporal proximity of Johnson's protected activity and the adverse employment actions is sufficient to satisfy the causation element of the prima facie case.

Having found that Johnson has sufficiently shown all three elements of the prima facie case of unlawful retaliation, the burden shifts to the Advertiser to demonstrate that it had a legitimate business reason for terminating Johnson.

## 2.    The Advertiser's Proffered Legitimate Business Reasons for Adverse Employment Action

The Court finds that the Advertiser has sufficiently proffered legitimate business reasons for placing Johnson on the PIP and ultimately terminating his employment.  The record shows that prior to Johnson's placement on the PIP, the Advertiser disciplined Johnson multiple times for performance and behavioral reasons.  (Doc. #13-7, 5) (April 29, 2008 letter from Mel Gray reprimanding Johnson for creating a hostile work environment); (Doc. #22-7, 8) (May 22, 2008 letter from Wanda Lloyd reprimanding Johnson for failing

to control his temper and insubordination); (Doc. #22-7, 9) (June 18, 2008 letter from Wanda Lloyd reprimanding Johnson for violating company policy regarding use of company credit card); (Doc. #22-7, 10) (Aug. 14, 2008 letter from Mel Gray reprimanding Johnson for failure to follow up on an assignment to cover an Olympic story with local interest).

After Johnson was placed on the PIP, the record shows that Johnson showed only limited improvement in the five problem areas identified by the Advertiser and that Johnson still did not meet the expected performance standards. (Doc. #22-7, 15). Moreover, after the PIP began, Wanda Lloyd issued Johnson a performance warning because a customer complained that Johnson treated him poorly over the phone. (Doc. #22-7, 23). The termination memorandum states that Johnson failed to adequately plan as required, failed to communicate clearly with his staff, failed to manage his reporters's vacation time, failed to complete required tasks, and failed to control his temper. (Doc. #22-7, 24).

The Court finds that the Advertiser has sufficiently met its burden of rebutting the prima facie case of unlawful retaliation by demonstrating legitimate business reasons for terminating Johnson's employment. As a result, the presumption of retaliation established through the prima facie case disappears and the burden shifts back to Johnson to show that the Advertiser's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct. *See Johnson v. Booker T. Washington Broadcasting Svc., Inc.*, 234 F.3d 501, 507 n.6 (11th Cir. 2000).

### 3. Pretext

Johnson has the burden to show that the Advertiser's proffered legitimate business reasons for adverse employment action are pretextual. To show pretext and thereby avoid

16

summary judgment, the plaintiff must produce sufficient evidence for a reasonable fact finder to conclude that a retaliatory reason for the adverse employment action is more likely or that each of the employer's proffered reasons for the adverse employment action is unworthy of credence.  *Accord Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 256; *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *Chapman v. AI Transport*, 229 F.3d 1012, 1037 (11th Cir. 2000).

The parties acknowledge that one way for a plaintiff to show pretext is for the plaintiff to offer evidence to refute each of the defendant's proffered legitimate business reasons.  *See Chapman v. AI Transp.*, 229 F.3d at 1024 ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the defendant is entitled to summary judgment."); *see also Combs*, 106 F.3d at 1543 (11th Cir. 1997) (determining that the defendant was entitled to summary judgment because the plaintiff failed to rebut one of the three legitimate business reasons offered by the defendant).

Under this rubric, the Advertiser is entitled to summary judgment.  One of the Advertiser's proffered business reasons for terminating Johnson's employment was Johnson's failure to improve his performance while he was on the PIP.  Johnson stated that he thought the PIP was a "joke". (Doc. #26, 13).  He admitted that he failed to improve his performance during the PIP and that he continued to have problems with his temper and planning. (Doc. #21, 28) (citing Johnson's deposition testimony).  Because Johnson does not dispute these reasons for his termination, he has not demonstrated that each of the Advertiser's stated reasons for his termination is pretextual and the Advertiser is entitled to

17

summary judgment.

But Johnson argues in the footnotes of his brief opposing summary judgment that he should not be required to rebut each proffered legitimate business reason in order to survive summary judgment.  To require a comprehensive rebuttal, Johnson argues, would require Johnson to satisfy a higher standard of proof at the summary judgment stage than a finder of fact would apply in evaluating the evidence at trial.  (Doc. #24, 31 n.31).  Instead of requiring Johnson to rebut each legitimate business reason proffered by the Advertiser, Johnson encourages the Court to adopt the dissenting opinion in *Chapman v. AI Transp.*, 229 F.3d 1012 (11th Cir. 2000), which carved out several exceptions to the majority rule that a plaintiff must meet each of the defendant's proffered legitimate business reasons head on. *See Chapman*, 229 F.3d at 1051 (Birch, J., dissenting).  Johnson urges the Court to adopt the minority view that, even if a plaintiff cannot or does not rebut all of the defendant's proffered legitimate business reasons, the plaintiff can survive summary judgment if he provides sufficient evidence to cast doubt on the defendant's credibility.  *Id.*; *see Alexander v. Chattahoochee Valley Community College*, 325 F. Supp. 2d 1274, 1292 n.31 (M.D. Ala. 2004) (Thompson, J.) ("The court agrees with the dissent in *Chapman* to the extent the dissent suggests that the rule announced in that case should be subject to exceptions. In particular, if the evidence of pretext as to some of the employer's proffered explanations is strong enough to allow a factfinder to conclude that the employer lacks all credibility, the plaintiff should be able to survive summary judgment without showing that each of the employer's proffered explanations is pretextual.").

Johnson claims that several of the Advertiser's proffered reasons for terminating his

employment are not worthy of credence. For example, Johnson argues that his alleged misuse of a company credit card cannot be a reason for his termination because Johnson was unaware of the company policy and, once aware, immediately complied with it. Johnson also argues that the Advertiser's decision to terminate him for failure to produce the requested story on the Olympics suggests pretext because Johnson assigned a reporter to produce the story, but the reporter never produced it. In addition, Johnson states that terminating him for failure to attend an internal training meeting suggests pretext because Johnson was covering the responsibilities of another reporter at the time, the Advertiser stated that it was reasonable for him to miss the meeting, and the Advertiser did not produce any documentation regarding specific meetings that Johnson had missed. (Doc. #24, 37-40). Johnson also argues that his positive performance reviews and bonus awards contradict the termination memorandum and suggest that the performance-related reasons for his termination are pretextual. (Doc. #24, 30-31).

Even if the Court were to evaluate Johnson's pretext argument using the dissent's reasoning in *Chapman*, the Court would still find that the Advertiser is entitled to summary judgment.[7] Johnson simply has not provided evidence of pretext as to the reasons for dismissing him that is strong enough for this Court to conclude that the Advertiser lacks all credibility. For one thing, Johnson and the Advertiser are in substantial agreement regarding Johnson's performance at the Advertiser. In fact, Johnson and the Advertiser both agree that Johnson had trouble with planning, that he had trouble with his temper, and that Johnson did

---

[7] The Court has considered the dissent's position in *Chapman* but expressly rejects this position and will follow the majority view as the established law in this Circuit.

not improve during the performance improvement plan.  (Doc. #21, 28) (citing Johnson's deposition testimony).  According to the PIP and the termination memorandum, these were important reasons for initiating the PIP and terminating Johnson.  That the Advertiser and Johnson agree on these important points lends credibility to the Advertiser's proffered legitimate business reasons for terminating Johnson.

Lastly, Johnson does not present evidence that the Advertiser treated Johnson differently than other similarly situated employees.  *See Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. App'x. 820, 824 (11th Cir. 2008) ("Raspanti failed to establish that the reasons given by Four Amigos were pretextual because she did not present evidence that the company fabricated [the reason for her termination] . . . or that the company treated her differently from similarly situated employees.").  As a result, Johnson has failed to produce sufficient evidence for a reasonable fact finder to conclude that the more likely reason for the Advertiser's actions was retaliation against Johnson, or that each of the Advertiser's proffered reasons for the adverse employment action is unworthy of credence.

## V.  Conclusion

For the foregoing reasons, it is hereby ORDERED that the Advertiser's motion for summary judgment is GRANTED.   It is further ORDERED that:

1)  The pretrial scheduled for April 5, 2011 and jury trial scheduled for May 9, 2011 are CANCELLED; and

2) The pending Motion for Leave to File Supplemental Briefs (Doc. #32) is DENIED as moot.

A final judgment consistent with this memorandum opinion will be entered in this case.

Done this the 28th day of March, 2011.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE